IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CEDRIC PARTEE a/k/a WEBB,

                  Plaintiff,            Civil Action No.
                                                5:19-CV-0417 (TJM/DEP)

    v.

THE CITY OF SYRACUSE, *et al.*,

                  Defendants

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

CEDRIC PARTEE, *Pro Se*
32 Candlelight Circle, Apt. A
Liverpool, NY 13090

FOR DEFENDANTS:

NONE

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

ORDER, REPORT, AND RECOMMENDATION

     *Pro se* plaintiff Cedric Partee, a New York State parolee, has

commenced this civil rights action, pursuant to 42 U.S.C. § 1983, against

the City of Syracuse ("City"), a City police officer, and various employees

of the New York State Department of Corrections and Community

Supervision ("DOCCS"), alleging that defendants violated a number of his rights arising under the United States Constitution. Plaintiff's complaint and an amended application for leave to proceed *in forma pauperis* ("IFP") submitted by the plaintiff have been forwarded to me for review. Based upon my consideration of those materials, I am granting plaintiff's amended IFP application, and recommending that his complaint be accepted only with respect to his Fourth Amendment claim asserted against one individual defendant.

I.    BACKGROUND

Plaintiff Cedric Partee, who also claims to be known as "Webb," commenced this action by the filing of a complaint, accompanied by a number of appended exhibits in support of his claims, on April 8, 2019. Dkt. No. 1; Dkt. No. 1-1. According to those documents, plaintiff was convicted in 1984, upon a jury verdict, of murder in the second degree, in violation of N.Y. Penal Law § 125.25, and was sentenced to an indeterminate term of imprisonment of twenty-five years to life. Dkt. No. 1-1 at 67. Plaintiff complains that his original written order of commitment contains a number of clerical errors in contravention of N.Y. Correction Law § 601-a that must be addressed by the DOCCS. Dkt. No. 1 at 12-14 (citing Dkt. No. 1-1 at 71).

2

Plaintiff's claims appear to have as their genesis his release from state custody, in 2014, to lifetime parole supervision. Dkt. No. 1 at 4; Dkt. No. 1-1 at 16, 58. Under the terms of that release, plaintiff was required to, *inter alia*, abstain from the use of alcohol and refrain from fraternizing with those known to have criminal records. Dkt. No. 1-1 at 16, 19-20, 58.

Although plaintiff's prolix pleading is peppered with constitutional and legal buzzwords, his claims are predicated upon his contention that defendants conspired, in various forms, to charge him with parole violations that he did not commit. *See generally* Dkt. No. 1; Dkt. No. 1-1. Plaintiff claims that he was accused by officers of consuming alcohol, striking his wife, Tina Chambliss-Partee, and being involved in an altercation with his brother-in-law, John Chambliss, on the evening of July 14, 2016, culminating in his arrest by defendant C. Cowan, a City police officer. *See generally* Dkt. No. 1; Dkt. No. 1-1.

On July 18, 2016, as a result of the incident, plaintiff received a notice of parole violation, in which he was charged as follows:

> CHARGE #1: [Plaintiff] violated Rule #7, of the rules governing his release in that on 07/14/16, he was in the company of John Chambliss, a person with a known criminal history who is supervised by the Syracuse Area Office.

> CHARGE #2: [Plaintiff] violated Special Condition #13(c), of the rules governing his release, in that on 07/14/16, he consumed alcohol.
>
> CHARGE #3: [Plaintiff] violated Rule #8, of the rules governing his release in that on 07/14/16, he threatened the safety and well-being of Tina Chambliss Partee, by causing injury to her eye.
>
> CHARGE #4: [Plaintiff] violated Rule #8, of the rules governing his release in that on 07/14/16, he threatened the safety and well-being of Tina Chambliss Partee, by causing injury to her eye, resulting in his arrest for assault.
>
> CHARGE #5: [Plaintiff] violated Rule #8, of the rules governing his release in that on 07/14/16, he threatened the safety and well-being of John Chambliss by having a physical altercation with him.

Dkt. No. 1-1 at 56-57; *see also* Dkt. No. 1 at 10.[1]

On September 13, 2016, the matter proceeded to a final parole revocation hearing, at which plaintiff was represented by counsel. Dkt. No. 1-1 at 15-72. Although plaintiff denied each of the allegations raised at the hearing, the charges alleging violations with regard to not consuming alcohol, fraternizing with a person known to have a criminal record, and

---

[1]    In addition to the notice of parole violation, plaintiff appears to have also been charged criminally in connection with the July 14, 2016 events, although one count of assault in the third degree was dismissed in the interest of justice pursuant to N.Y. Criminal Procedure Law § 170.30(1)(g) by the Syracuse City Court on September 6, 2016. Dkt. No. 1-1 at 65.

engaging in a physical confrontation, were sustained, leading ultimately to the revocation of his parole and imposition of a twenty-four-month additional period of incarceration.[2] *See generally* Dkt. No. 1, Dkt. No. 1-1; *see also Partee v. Stanford*, 159 A.D.3d 1294 (3d Dept 2018) (confirming the revocation of plaintiff's parole).

As relief for the foregoing, plaintiff seeks monetary damages in excess of $40 million, as well as injunctive relief of an unspecified nature. Dkt. No. 1 at 14-15.

II.    DISCUSSION

A.    IFP Application

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400.00, must ordinarily be paid.[3]  28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee.

---

[2]    Although Ms. Chambliss-Partee was subpoenaed by the DOCCS to testify at the final revocation hearing, she failed to appear. Dkt. No. 1-1 at 39. She subsequently provided plaintiff with a notarized statement in which she summarily stated as follows:

> I . . . did not tell my brother John Chambliss that [plaintiff] . . . hit me. I don't know why he lied at [plaintiff's] parole rehearing on September 13, 2016.

Dkt. No. 1-1 at 13.

[3]    The total cost for filing a civil action in this court is $ 400.00, consisting of the civil filing fee of $350.00, 28 U.S.C. § 1914(a), and an administrative fee of $ 50.00.

28 U.S.C. § 1915(a)(1).[4] Although plaintiff has submitted a completed, amended IFP application, in it he indicates that he receives no income from any sources whatsoever. Dkt. No. 2. It strains credulity that plaintiff has no source of income at all, even if it is in the form of public assistance, Social Security benefits, or financial help from friends or relatives.[5] *See id.* However, for purposes of this order, report, and recommendation, I will assume that plaintiff is financially eligible for IFP status.[6] *See id.*

B.    Sufficiency of Plaintiff's Complaint

        1.    Standard of Review

Because I have found that plaintiff meets the financial criteria for commencing this action IFP, I must next consider the sufficiency of plaintiff's claims in light of 28 U.S.C. § 1915(e). Section 1915(e) directs

---

[4]    The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[5]    Indeed, according to documents appended to the plaintiff's complaint, he claims to receive Social Security supplemental security income ("SSI") payments. *See* Dkt. No. 1-1 at 59.

[6]    Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations. *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face

7

of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or the factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)) (internal quotation marks and emphasis omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

   2. <u>Analysis of Plaintiff's Claims</u>

Plaintiff purports to bring this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the

United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (quoting *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also* 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights[,]'. . . . [but] merely provides 'a method for vindicating federal rights elsewhere conferred[.]' " *Patterson*, 375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). In order to state a claim pursuant to section 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

a.    Personal Involvement of Defendants Moss and
       Snyder

In his complaint, plaintiff names Supervising Parole Officers "Moss" and "J. Snyder" as two of the defendants sued. Other than listing these defendants under "Parties to Action" and in the "Relief Requested" sections of his complaint, however, those defendants are nowhere mentioned in the body of plaintiff's complaint.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v.*

*Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)) (internal quotation marks omitted). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under [the] law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

Because plaintiff has made only passing reference to defendants Moss and Snyder in his complaint, and has included no factual allegations regarding their conduct, he has failed to plausibly allege their personal involvement in any constitutional violations. Accordingly, I recommend that plaintiff's complaint be dismissed as against those defendants based upon their lack of personal involvement.

11

b.   <u>City of Syracuse</u>

Plaintiff names the City of Syracuse as a defendant, yet fails to plausibly allege any facts that would support a claim against that entity. A municipal entity may be held accountable for a constitutional violation that has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). Municipal liability for the acts of its employees can be established in several ways, including through "proof of an officially adopted rule or widespread, informal custom" demonstrating " 'a deliberate government policy or failing to train or supervise its officers.' " *Bruker v. City of N.Y.*, 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (quoting *Anthony v. City of N.Y.*, 339 F.3d 129, 140 (2d Cir. 2003)). A plaintiff may also show that the allegedly unconstitutional action was "taken or caused by an official whose actions represent official policy," *Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir. 2000), or when municipal officers have acquiesced in or condoned a known policy, custom, or practice that violates federal law. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004);

*see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.").

In this case, plaintiff has failed to allege the existence of a specific policy of the City of Syracuse that led to the constitutional violations asserted in his complaint. Instead, he has merely alleged that the City should be held accountable based upon its alleged failure to properly hire, train, and supervise it employees. *See, e.g.*, Dkt. No. 1 at 8. Such a conclusory allegation is insufficient to states a plausible municipal liability claim. *Simms v. City of New York*, 480 Fed. App'x 627, 631 n.4 (2d Cir. 2015) (noting that plaintiff's "conclusory allegation that the City failed to train its officers, without any supporting factual material" is insufficient to state a claim for municipal liability under section 1983). Accordingly, I recommend that plaintiff's claims against the City of Syracuse be dismissed.

c.    N.Y. Correction Law § 601-a and Defendant
       Annucci

While the primary thrust of plaintiff's complaint stems from the circumstances leading to the revocation of his parole, plaintiff also

complains that defendant Anthony J. Annucci, the Acting Commissioner of the DOCCS, failed in his obligation to correct various clerical errors appearing in plaintiff's original order of commitment, as well as other documents concerning plaintiff, and which are maintained by the DOCCS. Dkt. No. 1 at 12-14 (citing Dkt. No. 1-1 at 71). Although his claims against Annucci are inartfully pled, plaintiff appears to allege that because the written order of commitment referred to him as "Cedric Partee," rather than "Cedric Webb," and indicated that his NYSID was 4064899K, rather than 4064899M, the sentence imposed was illegal, resulting in a violation of his constitutional rights.[7]

More specifically, plaintiff claims that his constitutional rights were violated by virtue of the fact that the Annucci, in his capacity as the Acting Commissioner of the DOCCS, was derelict in his duties arising under N.Y. Correctional Law § 601-a. That section directs the DOCCS to bring any sentencing irregularities to the attention of the sentencing court so that a defendant can be resentenced to comply with the law.[8] Assuming that at

---

[7]    At the same time, plaintiff appears to suggest that at least the clerical error with respect to his NYSID was corrected "by the Administration of Correction[,]" but that the correction "resulted in a lost [sic] of jurisdiction." Dkt. No. 1 at 12.

[8]    Specifically, that section provides as follows:

> Whenever it shall appear to the satisfaction of the
> department based on facts submitted on behalf of a person

least some aspect of a successful challenge to the correctness of the written order of commitment would not result in plaintiff's immediate or speedier release from parole supervision, such that the sole procedure available is a habeas corpus proceeding, plaintiff's claim is nonetheless not cognizable under section 1983. Any alleged clerical error in a written order of commitment implicates an issue of state law. *See, e.g.*, *Jackson v. Annucci*, No. 18-CV-1162, 2018 WL 7959122, at *5 (Dec. 19, 2018) (Sannes, J.) (citing *Vasquez v. Loiodice*, No. 07-CV-7164, 2009 WL 2575775, at *2 (S.D.N.Y. Aug. 20, 2009)), *reconsideration denied*, 2019 WL 1517580 (N.D.N.Y. Apr. 8, 2019). The proper procedure for the plaintiff to challenge the perceived inadequacies with the written order of commitment is by commencing an "appropriate proceeding" with the

---

sentenced and confined in a state prison, that any such person has been erroneously sentenced, it shall be the duty of the department to communicate with the sentencing court, the inmate's defense attorney and the district attorney of the county in which such person was convicted. If upon investigation, the sentencing court, the defense attorney or the district attorney believes that the person has been so erroneously sentenced, the sentencing court, or the district attorney acting at the direction of the sentencing court, shall notify the department and arrange for the person to be heard and properly resentenced. The department thereupon shall comply with any court order to produce such person from such prison and cause him or her to be taken before the court in which he or she was sentenced for the purpose of resentence.

N.Y. Corr. Law § 601-a.

sentencing court. *See, e.g.*, *Jackson*, 2018 WL 7959122, at \*6; *Matter of McCullaugh v. DeSimone*, 111 A.D.3d 1011, 1012 (3d Dept 2013).

Based upon the foregoing, I find that plaintiff's claim against defendant Annucci arising under N.Y. Correction Law § 601-a is not cognizable under section 1983, and I therefore recommend that it be dismissed.

### d.    The *Heck* Doctrine

When a plaintiff seeks "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," the plaintiff must prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see also Estes v Doe*, No. 97-CV-8133, 1999 WL 983886, at \*3 (S.D.N.Y. Oct. 29, 1999) (quoting *Heck*). "A claim for damages relating to a conviction that has not been so invalidated is not cognizable under Section 1983." *Estes*, 1999 WL 983886, at \*3. Therefore,

> when a state prisoner seeks damages in a § 1983
> suit, the district court must consider whether a

> judgment in favor of the plaintiff would necessarily
> imply the invalidity of his conviction or sentence; if it
> would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.

*Heck*, 512 U.S. at 487.

Significantly, *Heck* and its "favorable termination" rule applies to actions pursuant to section 1983 that challenge the fact or duration of confinement based on the revocation of parole. *See, e.g.*, *Bratton v. New York State Div. of Parole*, No. 05-CV-950, 2006 WL 2792743, at *2 (N.D.N.Y. 2006) (Mordue, J.) ("District courts have applied the *Heck* holding to section 1983 lawsuits based on the revocation of parole.") (citing *inter alia Dallas v. Goldberg*, 143 F. Supp. 2d 312, 322 (S.D.N.Y. 2001) ("The *Heck* holding applies equally in the parole revocation context.")); *see also Loving v. Harris*, No. 05-CV-3411, 2005 WL 1961420, *3 (E.D.N.Y. 2005).

Plaintiff's complaint contains a number of naked assertions, though is otherwise conspicuously devoid of factual enhancement, making the precise nature of his claims difficult to discern with any degree of certainty. Plaintiff appears to allege, however, that during the course of his arrest and resulting revocation hearing, he was deprived of equal protection of the law through the use of "discriminatory practices towards [him]." Dkt.

17

No. 1 at 12; *see also id.* at 9-11. Specifically, plaintiff claims that defendants' improper actions were motivated by discriminatory animus against plaintiff as a "Categore [sic] 1 Parolee," and plaintiff was treated differently than similarly situated persons on parole. Dkt. No. 1 at 12; *see also id.* at 8, 11.

The equal protection clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state a cognizable equal protection cause of action, a plaintiff must allege sufficient facts that plausibly suggest that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995).

Even assuming that plaintiff's allegations were sufficient to state a claim under the equal protection clause of the Fourteenth Amendment under Rule 8 and *Iqbal*, his equal protection claim fails under the rule promulgated in *Heck*. Plaintiff has not alleged facts that plausibly suggest that the decision to revoke his parole has been invalidated, vacated, overturned, or expunged. *Davis v. Cotov*, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002) ("However, [the plaintiff] does not allege that he has

succeeded in establishing the invalidity of his parole revocation in an appropriate state or federal proceeding."). Because plaintiff's equal protection claim "goes to the heart of the constitutionality" of his parole revocation, it therefore "call[s] into question the validity" of the revocation, and thus is not cognizable under section 1983. *See Burris v. Nassau Cty. Dist. Attorney*, No. 14-CV-5540, 2017 WL 9485714, at *11 (Jan. 12, 2017) (recommending dismissal of plaintiff's first amendment claim under the rule in *Heck* because it "[bore] on the validity of plaintiff's underlying conviction and sentence"), *report and recommendation adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017).

Finally, to the extent that plaintiff's complaint can be read as challenging the terms and conditions of his supervised release—which plaintiff claims were applied as a result of a "conspiracy" among the defendants—this too "would necessarily imply the invalidity" of his parole revocation. *See Robinson v. N.Y. State Dep't of Corr. Servs.*, No. 08-CV-0911, 2008 WL 4560098, at *2 (N.D.N.Y. Oct. 8, 2008) (McAvoy, J.) (finding that plaintiff's challenge to the terms and conditions of his supervised release was barred under *Heck*); *see also Davis*, 214 F. Supp. 2d at 316 (plaintiff's claim that his parole revocation was the result of inadequate parole revocation proceedings is barred under *Heck*).

19

Accordingly, I recommend that plaintiff's equal protection claim, as well as any claim challenging the conditions of his parole, be dismissed as barred pursuant to *Heck.*

e.    Fourth Amendment and Defendant Cowan

Plaintiff also alleges that defendant Cowan "forced plaintiff from his home[] without an arrest warrant" and handcuffed him on July 14, 2016, in violation of his rights under the Fourth Amendment. Dkt. No. 1 at 8, 10. Based upon these limited allegations, it is unclear whether that claim is based upon defendant Cowan's unlawful entry into plaintiff's home, an unlawful search and seizure, or both. What does appear clear from plaintiff's complaint and accompanying exhibits is that that plaintiff does not challenge his actual arrest as violating the Fourth Amendment, since his arrest was conducted pursuant to a warrant. *See generally* Dkt. No. 1; *see also* Dkt. No. 1-1 at 57-59 (detailing plaintiff's purported violation of release to parole supervision and resulting arrest pursuant to a warrant). It appears that at the time Cowan approached plaintiff's home, however, no such warrant had yet been issued. *See* Dkt. No. 1 at 8; Dkt. No. 1-1 at 58.

The Fourth Amendment prohibits "unreasonable searches and seizures," and the Warrants Clause requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

20

particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Generally, "a search or seizure pursuant to a warrant is presumed valid." *U.S. v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003); *accord Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("There is . . . a presumption of validity with respect to the affidavit supporting [a] search warrant."); *see also U.S. v. Canfield*, 212 F.3d 713, 717 (2d Cir. 2000).

While *Heck* would traditionally bar a plaintiff's claim brought pursuant to section 1983 under the circumstances discussed herein, the Supreme Court and the Second Circuit have both recognized that traditional Fourth Amendment claims are ordinarily not barred by *Heck* because, in light of exceptions to the exclusionary rule—such as the independent source doctrine and the inevitable discovery doctrine—a favorable outcome on a claim pursuant to 42 U.S.C. § 1983 would not necessarily demonstrate the invalidity of a related conviction, or in this instance, revocation of a parolee's supervised release. *Heck*, 512 U.S. at 487 n.7; *Fifield v. Barrancotta*, 353 F. App'x 479, 480-81 (2d Cir. 2009). Thus, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against

the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck*, 512 U.S. at 487.

Here, although *Heck* may potentially bar plaintiff's claim that defendant Cowan illegally forced plaintiff from his home and handcuffed him, it is difficult to discern whether plaintiff's release under supervision would have been revoked absent Cowan's alleged interactions with plaintiff. Thus, in light of this uncertainty and considering the court's obligation to liberally construe a *pro se* litigant's pleadings, I find that plaintiff's complaint should be accepted for filing and that defendant Cowan should be required to respond in accordance with the local rules of practice for this court and the Federal Rules of Civil Procedure. I should note, however, that in recommending that the court require a response from defendant Cowan, I express no opinion as to whether plaintiff's claims can survive a properly filed motion to dismiss, motion for summary judgment, or whether he may prevail at trial.

### f.    Eleventh Amendment Immunity

In his complaint, plaintiff asserts that his claims against the individual DOCCS Division of Parole defendants, which plaintiff has sued in both their individual and official capacities, are not barred by sovereign

immunity afforded under the Eleventh Amendment. Dkt. No. 1 at 14.
However, for the reasons set forth below, I reject that assertion.

The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *accord Cory v. White*, 457 U.S. 85, 90-91 (1982); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest. *See, e.g., Daisernia v. State of N.Y.*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.). As plaintiff has named the defendant-officers of the Division of Parole in their official capacities and seeks monetary damages, those claims are barred by the Eleventh Amendment. *See Ennis v. N.Y. Dep't of Parole*, No. 5:18-CV-501, 2018 WL 3869151, at *4 (N.D.N.Y. June 12, 2018) (Dancks, M.J.) ("[C]laims for money damages against state officials, including DOCCS officials and parole officers, sued in their official capacities, are also barred under the Eleventh Amendment."), *report and recommendation adopted by* 2018 WL 3862683 (N.D.N.Y. Aug. 14, 2018).

23

The Supreme Court, in *Ex parte Young*, 209 U.S. 123 (1908), however, established an exception to state sovereign immunity where the plaintiff brings an action seeking injunctive relief against an individual in their official capacity for an ongoing violation. Specifically, "a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, '(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.' " *Olivo v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:17-CV-0357, 2017 WL 2656199, at *3 (N.D.N.Y. June 20, 2017) (Sannes, J.) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007)). Liberally construing plaintiff's complaint, and considering that plaintiff has since been returned to his supervised release status,[9] I find that plaintiff has not alleged any facts to suggest an ongoing violation against him that would warrant prospective relief. *See id.* Thus, to the extent that plaintiff seeks injunctive relief against defendants in their official capacities, I recommend that those claims be dismissed as barred by the Eleventh Amendment.

---

[9]     DOCCS records matching plaintiff's department identification number (84A5009) indicate that on July 12, 2018, plaintiff was released on parole. *See* DOCCS Inmate Information, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (last visited May 22, 2019).

g.    State Law Claims[10]

Finally, plaintiff's complaint also refers to defendant Cowan having

committed state law torts, including malicious prosecution, intentional

infliction of emotional distress, and fraud. Dkt. No. 1 at 8. Beyond

suggesting that these torts occurred, plaintiff has failed to provide any

further factual enhancement to his claims. *See Iqbal*, 556 U.S. at 678. For

instance, assuming that plaintiff's intentional infliction of emotional distress

was not otherwise time-barred pursuant to N.Y. Civil Practice Law and

Rules § 215(3), plaintiff does not plausibly allege any facts that would

suggest defendant Cowan engaged in extreme conduct that was so

shocking and outrageous as to exceed all reasonable bounds of decency

as required under New York law. *See Washington v. Cty. of Onondaga*,

No. 5:04-CV-0997, 2009 WL 3171787, at *86 (N.D.N.Y. Sept. 29, 2009)

(Suddaby, C.J.) (defining actionable conduct for a claim of intentional

infliction of emotion distress as conduct that is "so outrageous in character

and so extreme in degree, as to go beyond all possible bounds of

---

[10]    Based upon my finding that plaintiff's federal claims against all defendants with
the exception of defendant Cowan are subject to dismissal, I recommend that the court
decline to extend supplemental jurisdiction over his state law claims against those
defendants. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise
supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all
claims over which it has original jurisdiction."). Accordingly, in this section I address
only plaintiff's state law claims against defendant Cowan.

decency, and utterly intolerable in a civilized society" (citations and internal quotation marks omitted)); *Lazo v. United States*, No. 06-CV-5438, 2007 WL 2948342, *5 (S.D.N.Y. Oct. 9, 2007) ("The conduct of the Government employees in this case in seeking an arrest warrant and proceeding to a revocation hearing for a parolee who had never appeared for supervision plainly cannot be characterized as 'extreme and outrageous.' ").

Furthermore, plaintiff has not pled sufficient conduct to state a claim for malicious prosecution or fraud. To state a claim for malicious prosecution under New York law, plaintiff must establish the following four elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Caidor v. M&T Bank*, No. 05-CV-0297, 2006 WL 839547, at *7 (N.D.N.Y. Mar. 27, 2006) (Scullin, J.) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir.1997)) (internal quotation marks omitted). Here, the proceedings at issue—the September 13, 2016 revocation hearing—were not terminated in plaintiff's favor as the decision to revoke plaintiff's supervised release was upheld. *See generally* Dkt. No. 1-1. Moreover, plaintiff has failed to plead that defendant Cowan acted with "actual malice" as the motivating factor for any of his actions.

Considering plaintiff cannot meet these critical elements, his claim for malicious prosecution must fail.

Likewise, plaintiff has not established a claim for common law fraud under New York law. To state such a claim, plaintiff must demonstrate that "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." *Kearney v. N.Y.S. D.O.C.S.*, No. 9:11-CV-1281, 2013 WL 5437372, at *14 (N.D.N.Y. Sept. 27, 2013) (Suddaby, C.J.) (citing *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir.1995)), *aff'd sub nom. Kearney v. New York State Dep't of Corr. Servs.*, 581 F. App'x 45 (2d Cir. 2014). A plain reading of plaintiff's complaint demonstrates that he has failed to plead the essential elements of a claim for fraud. Here, there is no mention in plaintiff's complaint of a materially false statement made by Cowan on which plaintiff relied. Additionally, plaintiff failed to plead that Cowan made any such statement with the intent to defraud plaintiff.

In sum, I find that plaintiff's claims fall well short of passing muster under Rule 8 and *Iqbal*, and accordingly, I recommend that plaintiff's state law claims be dismissed.

C.    Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could not "determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord*

*Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, it is possible that, with the inclusion of additional factual detail, plaintiff may be able to state a plausible section 1983 claim against all or some of the defendants. For that reason, I recommend that plaintiff be permitted to submit an amended complaint that cures the deficiencies identified in this report.

In the event that plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, plaintiff must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the

29

named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

III.    <u>SUMMARY, ORDER, AND RECOMMENDATION</u>

Having reviewed plaintiff's amended request for leave to proceed without prepayment of fees, although I am skeptical of the information provided by plaintiff, I find that his application demonstrates his entitlement to that status. Turning to the merits of plaintiff's complaint, however, and applying the standard set forth in 28 U.S.C. § 1915(e), I conclude that plaintiff's complaint fails to state a cognizable claim against any of defendants, with the exception of defendant Cowan. In deference to plaintiff's *pro se* status, I find that defendant Cowan should be directed to

respond to the complaint insofar as it asserts a claim against him under the Fourth Amendment. Accordingly, it is hereby

ORDERED that plaintiff's application for leave to proceed in this action without prepayment of fees (Dkt. No. 2) is GRANTED; and it is further respectfully

RECOMMENDED that plaintiff's complaint in this action (Dkt. No. 1) be ACCEPTED for filing only with respect to plaintiff's Fourth Amendment claim against defendant Cowan, but that plaintiff's remaining claims, asserted against all other defendants named in this action be DISMISSED with leave to replead within thirty days of any decision and order adopting this report.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[11] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

---

[11]    If you are proceeding *pro se* and are served with this order, report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

The clerk of the court shall serve a copy of this order, report, and recommendation on plaintiff in accordance with the local rules.

David E. Peebles
U.S. Magistrate Judge

Date: May 23, 2019
        Syracuse, New York